UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

           -v-

KIDANE GALLIMORE,

                 Defendant.

**<u>OPINION & ORDER</u>**

23-CR-00066 (PMH)

PHILIP M. HALPERN, United States District Judge:

Kidane Gallimore ("Defendant") stands charged in a three-count indictment charging him with: (i) conspiracy to distribute and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(b)(1)(A); (ii) possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(b)(1)(B); and (iii) use of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 24, "Indictment").

Before the Court is Defendant's motion to suppress his post-arrest statements and the evidence found during the subsequent search of Defendant's home. Defendant filed the motion to suppress on March 15, 2024. (Doc. 46; Doc. 47, "Def. Br."; Doc. 47-1, "Def. Aff."). The government filed its opposition on April 15, 2024 (Doc. 48, "Gov. Br."; Doc. 49, "Knieste Aff."; Doc. 50, "Lansing Aff."; Doc. 51, "Ayers Aff.") and Defendant filed a letter on April 26, 2024 requesting an evidentiary hearing and stating that he did not intend on filing a reply brief (Doc. 52).[1] The Court held an evidentiary hearing and heard testimony on May 20, 2024, which was continued on June 13, 2024.[2] (Doc. 54; Doc. 56).

---

[1] The government joined Defendant in requesting that the Court hold "a limited evidentiary hearing to decide the factual issues raised in [Defendant's] suppression motion." (Doc. 48 at 25).

[2] The Court continued the evidentiary hearing to June 13, 2024 at the request of defense counsel, who required additional time to determine if Defendant would be offering any witnesses in support of his motion to suppress. (Doc. 54).

Based upon the parties' written submissions, the testimony adduced at the evidentiary hearing, and for the reasons set forth below, Defendant's motion is DENIED.

## BACKGROUND

On June 27, 2022, law enforcement officers working USPS Office of Inspector General ("USPS OIG"), the United States Postal Inspection Services ("USPIS"), and the Drug Enforcement Administration ("DEA") executed a plan to surveil and arrest Defendant. (Doc. 48-1 at 4). Law enforcement observed Defendant divert three packages along his postal route. (Knieste Aff. ¶ 5). At approximately 12:45 p.m., law enforcement observed Defendant exit his assigned postal truck and carry what appeared to be the diverted packages towards his known residence on Ludlow Street in Yonkers, New York. (Doc. 48-1 at 5). Defendant was arrested without incident by DEA Task Force Officers Timothy Gould and Gary Mazzacano, who approached Defendant and placed him in handcuffs. (Lansing Aff. at ¶ 4.) Defendant was placed under the charge of Postal Inspector Meghan Ayers, who waited with Defendant on the steps outside of his residence for a few minutes before escorting him to the rear seat of a law enforcement SUV. (Ayers Aff. at ¶¶ 4-5.)

Agent Kyle Knieste walked over to the law enforcement vehicle where Defendant was being held at approximately 1:00 p.m. Agent Knieste testified that he identified himself to Defendant, advised him that he was under arrest, and read Defendant his *Miranda* rights. (May 20, 2024 Hr'g Tr. at 22:5-24:8).[3] Inspector Ayers testified that he observed Knieste take the *Miranda* rights warning card out of his wallet and read the *Miranda* warning to Defendant. (*Id.* 108:13-109:12). Knieste began speaking to Defendant but Defendant told Knieste that he did not want to

---

[3] Agent Knieste testified that he took a screenshot of the lock screen of his cellphone after he read Defendant his *Miranda* rights to memorialize the time. (May 20, 2024 Hr.g Tr. at 24:5-25:16). Agent Knieste then deleted the screenshot from his cellphone, as was his practice, after he memorialized the time on the USPS OIG *Miranda* rights form. (*Id.*; Doc. 48-5).

speak with him. (*Id.* at 49:13-50:2; *see also* Knieste Aff. ¶ 11 ("I asked if he wanted to talk to me, and Gallimore stated, in sum and substance, that he didn't want to speak to me.")). Agent Knieste then walked away from the law enforcement vehicle to make a call to the U.S. Attorney's Office, and informed Detective Doug Lansing and Inspector Ayers that he had given Defendant a verbal *Miranda* warning. (May 20, 2024 Hr'g Tr. at 26:6-27:22). After Agent Knieste walked away from the vehicle, Inspector Ayers called Detective Lansing over to the vehicle and they told Defendant that they would need to conduct a search of his home and they could either obtain a search warrant or Defendant could provide his consent for the search. (*Id.* at 110:4-11). Detective Lansing and Inspector Ayers each testified that Defendant verbally gave his consent to the search of his home and subsequently signed the DEA consent-to-search form. (*Id.* at 76:20-80:6 (Lansing's testimony regarding Defendant providing consent to search his home); 110:20-113:5 (Ayers' testimony regarding same)). Defendant told Detective Lansing and Inspector Ayers, while the three were discussing the search of his home, that the safe in his bedroom contained narcotics, money, and a firearm. (*Id.* at 76:2-11).

Agent Knieste, Detective Lansing, Inspector Ayers, and other law enforcement officers executed a search of Defendant's home at approximately 1:20 p.m. (*Id.* at 28:1-9). Defendant's mother-in-law, who lives in the apartment below Defendant, testified that she saw Defendant entering the apartment accompanied by law enforcement, and further testified that she observed Defendant signing a piece of paper after he entered the building while he was handcuffed. Defendant helped the law enforcement officers open his bedroom safe, and a search of that safe revealed a firearm, narcotics, and money. (*Id.* at 28:14-30:14). Specifically, law enforcement officers recovered a Kel-Tec P-11 9 mm pistol, 9 mm ammunition, two bags of a white, powdery substance (weighing approximately 385 grams) that later tested positive for fentanyl, and $12,000

cash. (Doc. 48-1 at 5). Defendant was taken to the DEA office in Manhattan following the search of his home. (May 20, 2024 Hr'g Tr. at 36:17-37:3). Defendant was interviewed by Agent Knieste, Inspector Ayers, and Detective Lansing at the DEA office at approximately 4:20 p.m. (*Id.* at 41:18-43:24). Agent Knieste identified himself to Defendant at the beginning of the interview and stated that he had previously read him his *Miranda* rights. (*Id.*). Defendant nodded his head in agreement to acknowledge that Agent Knieste had previously read him his *Miranda* rights. (*Id.*). Agent Knieste then discussed the USPS OIG *Miranda* rights waiver with Defendant and Defendant signed the form at approximately 4:29 p.m. (*Id.* at 44:19-45:10).

## ANALYSIS

Defendant argues that he was not read his *Miranda* rights before being subjected to a custodial interrogation and that his post-arrest statements, and the physical evidence found during the resulting search of his home, should be suppressed. (Def. Br. at 1).

### I.    *Miranda* **Warnings**

The prosecution may not use, absent a warning, a statement elicited by the police during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 448-50 (1966). Once the warning is properly administered, a defendant "is left to make his own choice as to how best to proceed." *United States v. Plugh*, 648 F.3d 118, 125 (2d Cir. 2011). If a defendant invokes his *Miranda* rights, all questioning must cease "unless the accused himself initiates further communication, exchanges, or conversations." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). A defendant must, however, unequivocally and unambiguously invoke the right to counsel. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). Waivers are considered "voluntary" when they are "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. O'Brien*, 926 F.3d 57, 73 (2d Cir. 2019). Equally clear is that a waiver

is considered "knowing" when it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

Courts assessing whether statements are admissible must consider "the totality of circumstances surrounding a *Miranda* waiver and any subsequent statements to determine knowledge and voluntariness." *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014). "Where a defendant has alleged police custodial interrogation in the absence of *Miranda* warnings, the burden shifts to the government to prove *Miranda* voluntariness, either because there was no custodial interrogation implicating *Miranda*, there was some exception to the *Miranda* rule, or because the defendant was properly *Mirandized* and waived his rights." *United States v. Medina*, 19 F. Supp. 3d 518, 537 (S.D.N.Y. 2014). "A technical deficiency in the administration of Miranda warnings is not in and of itself a violation of the Fifth Amendment," and "this Circuit has recognized that 'it is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period.'" *United States v. Yousef*, 925 F. Supp. 1063, 1074 (S.D.N.Y. 1996) (quoting *United States v. Morales*, 788 F.2d 883, 886 (2d Cir. 1986)).

Agent Knieste credibly testified that he read Defendant his *Miranda* rights, and Inspector Ayers provided corroboration when he credibly testified that he "observed Agent Knieste take out what I believe is his *Miranda* warning card from his wallet or credentials and read to Mr Gallimore his *Miranda* rights." (May 20, 2024 Hr'g Tr. at 108:16-20). Defendant acknowledged receiving

the *Miranda* warning at the beginning of his interview in the DEA office.[4] (*Id.* at 44:19-45:10). The USPS OIG *Miranda* rights waiver form that Defendant signed during his interview contains the handwritten notation "verbal 13:00" which Agent Knieste testified was written by him to memorialize the time at which he gave Defendant a verbal *Miranda* warning while Defendant was detained in the back of a law enforcement vehicle after being arrested. (Doc. 48-5). Considering these facts together, the Court holds that the government has met its burden in establishing that Defendant was properly *Mirandized* and waived his right to remain silent by discussing the search of his home with Inspector Lansing and Detective Ayers.

## II.      <u>Search of Defendant's Home</u>.

"The government has the burden of proving, by a preponderance of the evidence, that a consent to search was voluntary." *United States v. Isiofia*, 370 F.3d 226, 230 (2d Cir. 2004) (citing *United States v. Calvente*, 722 F.2d 1019, 1023 (2d Cir. 1983)). "[K]nowledge of the right to refuse consent is not a requirement to a finding of voluntariness." *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995). Rather, "[v]oluntariness is a question of fact determined by a totality of all the circumstances." *Isiofia*, 370 F.3d at 231. "The ultimate question presented is whether the officer had a reasonable basis for believing that there had been consent to the search." *Id.* Inspector Lansing and Detective Ayers told Defendant that they could obtain a search warrant, or that Defendant could alternatively consent to the search of his home. (May 20, 2024 Hr'g Tr. at 76:20-80:6; 110:20-113:5). Inspector Lansing and Detective Ayers credibly testified that Defendant

---

[4] Agent Knieste, as shown in the video recording of the interview, stated to Defendant "after you were placed under arrest, I advised you of your *Miranda* rights verbally" at which point Defendant nodded his head in agreement and said "mm-hmm" and Agent Knieste continued by stating that "I told you we were going to go over the form so we're going to do that now." (Def. Br., Ex. C.1 at 00:37-00:53). Defendant then proceeded to calmly and quietly go through the *Miranda* rights waiver form with Agent Knieste. (*Id.*).

voluntarily provided consent to search his home both verbally and then in writing.[5] (*Id.*). Defendant told Inspector Lansing and Detective Ayers, as he provided his consent for the search of his home, that his two children were in the apartment and that he did not want them to see him handcuffed. (*Id.* at 75:7-18). To accommodate Defendant's concern regarding his children seeing him handcuffed, Inspector Lansing covered Defendants hands as they entered the apartment building. (*Id.* at 79:22-80:2). Defendant was not a passive bystander in the search of his home, rather he took affirmative steps to assist the law enforcement officers locate the evidence recovered. Defendant told Inspector Lansing and Detective Ayers the location of narcotics and a firearm, the safe in his bedroom, and assisted the law enforcement officers in opening that safe. (*Id.* at 82:4-83:2 (Q: What did you search inside the apartment? A: I was in the back bedroom, Mr. Gallimore's bedroom. There was a safe in there that he described. And he actually opened it for us because we couldn't – the combination, we just couldn't get it to work, so he popped it open for us."). The law enforcement officers, under these circumstances, had a reasonable basis for believing that Defendant consented to the search of his home. Defendant took multiple affirmative steps—such as requesting that his handcuffs be covered when he entered the apartment, providing law enforcement offices with details about the layout of the apartment and where the contraband was located, and assisting the officers open the safe in his bedroom—which clearly establish that his consent to search his home was voluntary. The Court holds that the government has met its

---

[5] Defendant's mother-in-law testified that she observed Defendant signing an unidentified piece of paper after he entered the building. Whether Defendant signed the consent-to-search form in the vehicle outside his building hallway or immediately after he entered his apartment with the law enforcement officers is of no consequence. Defendant provided verbal consent to the search of his home before the search was conducted. Separately, and in any event, Inspector Lansing and Detective Ayers both credibly testified that Defendant signed the consent-to-search form in the vehicle, after Defendant provided them with details about the layout of the apartment and the location of the contraband. (*Id.* at 95:10-96:20; 127:9-16).

burden of proving, by a preponderance of the evidence, that Defendant voluntarily provided consent to search his home.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress is DENIED. The Court shall hold a status conference on July 22, 2024 at 12:30 p.m. The government is directed to file a proposed Order excluding time under the Speedy Trial Act from the date of this Opinion and Order through the date of the next status conference.

**SO ORDERED.**

Dated:  White Plains, New York
       July 15, 2024

_____
PHILIP M. HALPERN
United States District Judge